IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ORLANDO S. McKEITHEN,⁣         )
AIS #164717,                )
                           )
      Plaintiff,           )
                           )
   v.                    )  CASE NO. 3:11-CV-00190-WHA
                           )           [WO]
SGT. JACKSON, JUANICE COLE,    )
and ANGELA BROWN,        )
                           )
      Defendants.[1]       )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Orlando S. McKeithen ["McKeithen"], a former[2] inmate of the Alexander City Work Center Base ["Alex City"] in Alexander City, Alabama, filed this 42 U.S.C. § 1983 action alleging Defendants were deliberately indifferent to his serious medical needs during his incarceration at Alex City. He seeks trial by jury and requests damages. Specifically, McKeithen alleges that Defendants violated his rights secured by the Eighth Amendment when they were deliberately indifferent to his serious medical needs when he was suffering a stroke. McKeithen names as defendants Sergeant Cathy Jackson ["Jackson"], Sergeant Juanice Cole ["Cole"], and Nurse Angela Brown ["Brown"].[3]

---

[1]Plaintiff originally named Warden James Carlton and Former ADOC Commissioner Richard Allen as defendants. Carlton and Allen were dismissed as defendants pursuant to 28 U.S.C. § 1915(e)(2)(B). *Order of Apr. 19, 2011 - Doc. No. 15.*

[2]Plaintiff is currently incarcerated at the Kilby Correctional Facility located in Mt. Meigs, Alabama.

[3]Plaintiff originally identified Nurse Angela Brown as Nurse "Linda" Brown. At the time the actions about which Plaintiff complains occurred, there was no Nurse "Linda" Brown working at the Kilby

Pursuant to the orders of this court, Defendants filed answers, special reports, and supporting evidentiary material in response to the allegations contained in the complaint. In Defendants' reports, they assert that McKeithen's complaint is due to be dismissed because it is without merit. *Doc. Nos. 24, 37.* In addition, Brown argues the complaint is due to be dismissed because McKeithen failed to exhaust an administrative remedy available to him at the correctional facility as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Specifically, Brown asserts that McKeithen has failed to pursue the administrative remedies available to him at the Kilby Correctional Facility ["Kilby"] or any other Alabama Department of Corrections ["ADOC"] facility with respect to the claims presented in the complaint. *Doc. No. 37 at 2-4; A. Brown Affidavit - Doc. No. 37-1.* Brown asserts that Plaintiff has never submitted a grievance with respect to the allegations presented in the instant complaint at any ADOC facility, which is required before seeking court intervention regarding his claims.

In accordance with the orders of the court, McKeithen was informed that Defendants' special reports may, at any time, be treated as motions for summary judgment, and the court explained to McKeithen the proper manner in which to respond to a motion for summary judgment. *Doc. Nos. 27, 39.* McKeithen filed a response to the special reports filed by Defendants. *Doc. Nos. 30, 36, 34.* This case is now pending on Defendants' motions for summary judgment. Upon consideration of the motions, McKeithen's opposition to the

---

Correctional Facility, and thus, it is evident that Plaintiff's amended complaint was intended to be filed against Nurse Angela Brown. *See Doc. Nos. 12, 14, 19, 21, 22, 30, 31.*

motions, and the supporting and opposing evidentiary materials,  the court concludes that Defendants' motions for summary judgment are due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[4] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating

---

[4]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id.*  "'Shall' is also restored to express the direction to grant summary judgment." *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to McKeithen to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. [] Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive Defendants' properly supported motion for summary judgment, McKeithen is

4

required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof

5

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to

admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, McKeithen's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, McKeithen fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II. DISCUSSION

*A. The Medical Claim Against Defendants Jackson and Cole*

McKeithen claims that Defendants Jackson and Cole violated his Eighth Amendment rights by failing to provide him with prompt medical treatment after he began exhibiting

symptoms of a stroke.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that a defendant acted with deliberate indifference to the inmate's serious medical needs.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).  When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).  The objective element of an Eighth Amendment claim requires that the plaintiff demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235 1243 (11th Cir. 2003).  A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).  "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (internal quotation marks and citation omitted).  The subjective component of McKeithen's medical claim requires that he

8

demonstrate "deliberate indifference" to a serious medical need. *Farrow,* 320 F.3d at 1243. Deliberate indifference is shown by establishing that a defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. It may be demonstrated by either actual intent or reckless disregard. *See Farmer*, 511 U.S. at 834. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference." *Id*. at 837. Additionally, where a plaintiff complains of delay in medical treatment, he has the burden of establishing that he suffered a significant effect from the delay. *See Hill,* 40 F.3d at 1188.

Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim

by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel [v. Doe],* 888 F.2d [783,] 787 [11th Cir. 1989]. Medical treatment violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice "not sufficient" to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (alterations added); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that the defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Correctional officer defendants "are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll,* 991 F.2d 64, 69 (3rd Cir.1993); *White v. Farrier,* 849 F.2d 322, 327 (8th Cir.1988)." *Williams v. Limestone County, Ala.,* 198 F. App'x 893, 897 (11th Cir.  2006) (discussing supervisory correctional officials' liability).

The affidavits filed by Jackson and Cole address the allegations made by McKeithen. A thorough review of the evidentiary materials filed in this case demonstrates that these affidavits are corroborated by the objective medical records compiled contemporaneously

with treatment provided to McKeithen with respect to the instant claim of deliberate indifference.

McKeithen has a history of diabetes type II, hypertension, asthma (heavy smoking), post-traumatic stress disorder, cardiovascular accident-right side, and noncompliance with medications. *L. Brown Aff. - Doc. No. 24-4* at 2; *Doc. No. 24-5* at 31. On August 27, 2009, he was living in Alex City, which is a community work center that does not have twenty-four-hour health care staff in a health care unit ["HCU"], and inmates assigned there must qualify medically for work release pursuant to ADOC standards. *A. Brown Aff. ¶ 7- Doc. No. 37-1.* In other words, inmates assigned to Alex City "are generally healthy and do not suffer any acute medical condition or uncontrolled chronic conditions that require 24-hour nursing care, regular emergency care or infirmary care." *Id.* While housed at Alex City, McKeithen was enrolled in a chronic care clinic for his chronic diseases. *L. Brown Aff. - Doc. No. 24-4* at 2.

According to Jackson, at approximately 7:00 p.m. on August 27, 2009, McKeithen told her that he would like to have his blood sugar tested. Jackson escorted McKeithen to the nurse's station where a test showed he had a glucose level of 180. *Jackson Aff. - Doc. No. 24-1* at 1. Jackson contacted the HCU at Kilby Correctional Facility ["Kilby"], which is approximately fifty miles from Alex City. *A. Brown Aff. ¶ 17 - Doc. No. 37-1.* An unnamed nurse there told Jackson to instruct McKeithen to report to the standard diabetic pill call. *Jackson Aff. - Doc. No. 24-4* at 1. Jackson relayed the instruction to McKeithen, and when

11

Jackson asked McKeithen how he felt, McKeithen said he felt fine. *Id.* at 2. At 8:30 p.m., Jackson checked on McKeithen, who reported that he felt fine. *Id.* At 9:45 p.m., Jackson again checked on McKeithen who was sitting on his bed eating cookies. *Id.* McKeithen told Jackson that he felt fine. *Id.*

On August 28, 2009, at approximately 2:07 a.m., Officer Mark Jarrett, who is not named as a defendant, notified Cole that McKeithen was complaining that his right side was locking up on him. *Cole Aff. - Doc. No.24-2* at 1. Upon being questioned by Cole about his his symptoms, McKeithen indicated that he had taken aspirin a couple of days ago because one of the nurses told him it was good for diabetics to take aspirin. *Id.* McKeithen also told Cole that he was allergic to aspirin. *Id.* According to Cole, at that time McKeithen did not tell Cole he felt he was having a stroke. *Id.* Cole instructed Officer Jarrett to write an incident report on McKeithen's complaint. *Id.* Cole then immediately called the HCU at Kilby. *Id.* at 2.

Defendant Angela Brown, a Registered Nurse, was assigned to work third shift at Kilby in August 2009. *A. Brown Aff. ¶ 7 - Doc. No. 37-1.* Brown answered Cole's call on August 28, 2009. Cole told Brown about McKeithen's symptoms of pain and discomfort in his legs which Cole described as "cramping." *Id. ¶ 8.* Cole did not relay any other symptoms. *Id.* Brown did not have McKeithen's medical file because it was held at Alex City. *Id.* She did recall McKeithen, however, having seen him two years earlier when he resided at Kilby. *Id.* Brown recalled that McKeithen was an insulin-dependent diabetic. *Id.*

Brown further avers:

> Based upon Mr. McKeithen's condition as a diabetic, I was not immediately alarmed by his complaints of leg discomfort as such symptoms can commonly be associated with diabetic neuropathy, which would not necessarily constitute a condition requiring urgent medical care.  I did inquire with the correctional officer about Mr. McKeithen's blood sugar level and the officer informed me that Mr. McKeithen had demonstrated a normal blood sugar level,  which had been checked within the last hour.  Therefore, I informed the officer that I would need more information relative to Mr. McKeithen's complaints before I could suggest a course of action.  At that time, I could hear Mr. McKeithen speaking to the officer in the background though I could not understand the actual content of his statements. The officer indicated that she had described all of Mr. McKeithen's symptoms and, therefore, I recommended that the officer transfer Mr. McKeithen to the local hospital, which was located within a couple of miles of ACWR [Alex City Work Release] out of an abundance of caution. It is worth noting that, *based upon the limited symptoms reported by Mr. McKeithen, I did not believe that he was in any medical distress or required any immediate medical attention.*

*Id.* ¶ 9 (emphasis added).  Brown further states, "[a]s I ended this telephone conversation, the officer indicated that she would see what she could do to transport Mr. McKeithen and would contact me if she needed any further assistance or had any questions. In fact, I understood that the correctional officer would be arranging some type of transportation for Mr. McKeithen to the local hospital."  *Id.* ¶ 10.

According to Cole, however, Brown asked if McKeithen needed immediate assistance or could wait until a doctor arrived at Kilby at 6:00 a.m.  *Cole Aff. - Doc. No. 24-2* at 2. McKeithen told Cole that he felt he could wait until a doctor arrived at Kilby.  *Id.*  Cole then telephoned  Jackson, who was the on-call official, and advised Jackson of the incident and that McKeithen would be taken to Kilby for treatment.  Cole also called Lieutenant Michael

13

Adair to advise him of the incident.  Cole told McKeithen to lie down on his bed until he could be taken to Kilby HCU.  Cole made periodic checks on McKeithen to ensure he was alright, and each time Cole asked, McKeithen said he was fine.  *Id.*

At approximately 3:30 a.m., Cole went to McKeithen's bed to ensure he went to get his diabetic shot, but McKeithen was already on his way to get it.  *Id.*  At about 4:00 a.m., Cole went to the chow hall to check on McKeithen, and McKeithen was eating without assistance.  *Id.*  When Cole asked McKeithen how he was feeling, McKeithen responded he was fine.  *Id.*  At about 4:58 a.m., Cole instructed Officer Phillip Simmons to transport McKeithen to the Kilby HCU to be examined by a doctor.  *Id.*

Cole further avers:

I am not certified in the medical profession, and therefore not qualified to diagnose an inmate's medical complaint. I was not deliberately indifferent to inmate McKeithen's medical complaint. I followed the guidelines set by the Alabama Department of Corrections. When inmate McKeithen advised me of his complaint, I telephoned the Kilby Health Care Unit and also notified the on-call official. The Kilby Health Care staff asked me to ask inmate McKeithen could he wait until the doctor arrived at 6:00 a.m. Inmate McKeithen, on his own accord without any coercion, agreed to wait until the doctor arrived at Kilby. I agreed to send inmate McKeithen to Kilby Health Care at 6:00 a.m. due to inmate McKeithen's own statement that he was not in need of immediate medical attention, and informed me each time I checked on him that he was fine. All I had to go on was inmate McKeithen's word.

*Id.* at 2-3.

Brown did not receive further communication from Alex City.  *A. Brown Aff. ¶ 11 - Doc. No. 37-1.*  Brown states she was not involved in the decision regarding when or where to take McKeithen on the morning of August 28, 2009.  *Id. ¶ 19.*  As she was leaving at the

end of her shift at about 7:00 a.m., she saw McKeithen sitting in the HCU.  *Id.* ¶ 11.  He did not appear to her to be in any immediate medical distress, though Brown recognized he was undergoing an evaluation for complaints of leg discomfort.  *Id.*  Brown spoke with McKeithen, who said he overheard her conversation with the Alex City officer.  *Id.*  Brown states "McKeithen did not indicate to me during this brief conversation that he was suffering any symptoms other than the discomfort in his legs, which he had relayed to the ACWR medical staff.  I understand that he was later transferred to the local hospital at the direction of the Kilby medical staff, where he was diagnosed as  experiencing 'subacute' or minor stroke resulting from a small blot clot."  *Id. ¶ 11.*

> Defendant Brown avers:
>
> I have reviewed the Complaint filed by Mr. McKeithen.  Mr. McKeithen states in his Complaint that he reported to the medical staff that he was experiencing numbness and paralysis on his right side in the early morning hours of August 28, 2009.  However, I was never informed of these specific symptoms and, if I had been informed of these symptoms, I would have asked additional questions in order to determine the best course of action. . . .  Mr. McKeithen did not exhibit or report many of the traditional symptoms known as indicators of a stroke until after his arrival at Kilby.  For example, Mr. McKeithen did not report any numbness or weakness in his face or arm to the correctional officer at ACWR.  To my knowledge, Mr. McKeithen did not experience any confusion, trouble speaking or understanding speech at any point in time.  In fact, he appeared entirely coherent during my interactions with him.  Mr. McKeithen did not report any blurred vision, severe headache, any drowsiness or nausea until after he appeared at Kilby.  In retrospect, it does appear that Mr. McKeithen's stroke symptoms were transient in nature, making the likelihood of recognizing symptoms even more difficult.

*A. Brown Aff. ¶¶ 17-18 - Doc. No. 37-1.*

McKeithen was evaluated by a nurse at the Kilby HCU at about 7:00 a.m.  *Def's.'Doc.*

*No. 24-5* at 9-10.  He complained of weakness in his right eye, pain in his left arm, and balance off in his right leg.  *Id.*  He said he took aspirin the day before and was allergic to aspirin.  *Id.*  The nurse referred McKeithen to the mid-level health provider.  *Id.* at 10.  At about 7:30 a.m., the mid-level staff reviewed him and determined that he possibly suffered a cerebrovascular accident ["CVA"], also known as a stroke.  *L. Brown Aff. - Doc. No. 24-4* at 3; *Doc. No. 37-2* at 31-32.  McKeithen was transferred to Jackson Hospital in Montgomery, Alabama.  *Defs.' Doc. No. 24-5* at 17-18.  He told staff at Jackson Hospital that he got light-headed and weak when he was at work the previous day.  He checked his blood sugar, and it was 180.  He continued to be weak, and in the morning he felt much worse and weaker in his right side.  He had no previous history of stroke.  *Id.* at 17.  McKeithen was admitted into the hospital, evaluated for a stroke, and discharged on August 30, 2009.  *Id.* at 17-27.  He was diagnosed with a small focal acute ischemic infarct in the left periventricular white matter just superior to the thalamus. He also had some minimal chronic small vessel ischemic changes in the periventricular and subcortical white matter, as well as two cystic-appearing scalp lesions.  *Id.* at 22.  He returned to Kilby, where he was treated as a post-CVA patient with right-side weakness.  *Id.* at 27-28.  He was discharged from the ward on about September 8, 2009, when it was noted that his deficits were improving, he was ambulating with a walker, and stable.  *Id.* at 31, 34-35.

McKeithen disputes Defendants' version of events asserting that he reported numbness on one side to Jackson, he reported that he believed he suffered a stroke, that he

asked Jackson to take him to the hospital on the night of August 28, 2009, and that Jackson refused. *McKeithen Aff. - Doc. No. 36-1* at 1; *McKeithen Aff. - Doc. No. 2-1* at 1. McKeithen further disputes Cole's and Brown's versions of the events, stating that they were told McKeithen's right side was paralyzed. *McKeithen Aff. - Doc. No. 36-1* at 2. McKeithen provides the statement of another inmate who avers he witnessed McKeithen feeling numbness on his right side, he saw two inmates carrying McKeithen to the restroom because he could not feel the right side of his body, and he saw Cole and McKeithen on the phone with Kilby HCU. *Toyea Aff. - Doc. No. 36-3* at 2-3.

The difficulty with McKeithen's position is it is not corroborated by any of the medical records. Brown maintains she did not hear any comments about paralysis or numbness during the phone conversation even though McKeithen had an opportunity to correct her. When Brown saw McKeithen at the Kilby HCU, she spoke with him and did not observe the symptoms McKeithen now states he was exhibiting. Brown did not tell her that he was suffering numbness or paralysis. When he spoke with the Kilby HCU staff, he complained of weakness in his right eye, pain in his left arm, and his balance was off in his right leg. *Defs.' Doc. No. 24-5* at 9-10. It was staff who noted tingling and numbness. *Id.* at 9. Similarly, at the hospital, he said he was light headed and weak the previous day, and in the morning he felt much worse and weaker. *Defs.' Doc. No. 24-5* at 17. Staff noted that his speech was "[s]low and deliberated," but the notes do not indicate slurred speech. *Id.* at 18. As the court previously explained, "[a] mere 'scintilla' of evidence supporting the

17

opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

In hindsight, it is clear that McKeithen was experiencing a stroke.  Given the facts known to defendants Cole and Jackson at the time, however, no reasonable jury could find that they were deliberately indifferent to McKeithen's serious medical needs.  Defendant Jackson knew only McKeithen wanted his blood sugar tested; she assisted McKeithen; and she checked his health several times throughout her shift to ensure he needed no further medical assistance.  Although there is a fact question whether Cole agreed to transport McKeithen to a nearby hospital immediately or to Kilby in the morning, the salient fact is that Brown, in her professional opinion, and based on the information available to her at the time, did not believe McKeithen was in medical distress or required immediate medical attention.  *A. Brown Aff. ¶ 9 - Doc. No. 37-1.*  McKeithen did not complain about traditional stroke indicators until he arrived at Kilby.  *Id.* ¶ 18.  In addition, McKeithen repeatedly told Cole that he felt well enough to wait until the morning to see a doctor.  Cole, who has no medication certifications, relied on McKeithen's own assessment of his health, the professional medical opinion of Nurse Brown, and Cole's own observations.  *Cole Aff. - Doc. No. 24-2* at 2-3; *cf. Williams*, 198 F. App'x at 897 (supervisory correctional officers entitled to rely on judgment of medical professionals).  The record includes no observations by Cole that would suggest she knew McKeithen was in medical distress requiring immediate

18

treatment or suffering symptoms of a stroke.  Under the circumstances, a layperson would not recognize that McKeithen required emergency medical care on the night of August 27 and early morning of August 28, 2009.

No evidence exists tending to show that Jackson or Cole demonstrated deliberate indifference towards McKeithen's medical needs by intentionally or deliberately delaying his ability to receive necessary medical treatment or by interfering with his ability to access such treatment.  The undisputed records demonstrate that Cole and Jackson responded to McKeithen each time he asked for medical assistance, and they repeatedly checked on his health until he could be taken to a medical professional.  Based on the information relayed to Brown, in accordance with her medical experience and professional judgment, she did not deem it necessary to order McKeithen's immediate transport for emergency medical treatment.  It is likewise evident that McKeithen's stroke was not obvious to a layperson. Even if McKeithen's care was negligent, such negligence is not sufficient to constitute an Eighth Amendment violation.  *See Estelle*, 429 U.S. at 105-07.   The treatment McKeithen received from Jackson and Cole was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505.  In addition,  McKeithen fails to present any evidence which indicates that Jackson or Cole knew that the manner in which they provided treatment created a substantial risk to McKeithen's health and that with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or

otherwise, showing that Jackson or Cole acted with deliberate indifference to McKeithen's medical needs.  Consequently, summary judgment is due to be granted in favor of Defendants Cole and Jackson.  *See Carter*, 352 F.3d at 1350.

B.  *Exhaustion*

Defendant Nurse Brown asserts that McKeithen's claims against her are due to be dismissed because he failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  *Def's' Special Report - Doc. No. 37* at 17.  Specifically, Brown maintains that with regard to McKeithen's allegations concerning his medical treatment and care, he  failed to exhaust the administrative remedies available to him at Kilby or any other ADOC facility via the inmate grievance procedure. *Brown Aff. ¶¶ 3-6 - Doc. No. 37-1; CMS Grievance Procedure - Doc. No. 37-2* at 3-4.

The PLRA requires exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a 42 U.S.C. § 1983 complaint.  Specifically, 42 U.S.C. § 1997e(a) directs that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies."  *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular

episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).   Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexande*r *v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378 (2006).   Moreover, "the PLRA exhaustion requirement requires ***proper exhaustion***." *Id*. at 2387 (emphasis added).

The Supreme Court in *Woodford* determined "[proper exhaustion] means . . . that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." 126 S.Ct. at 2384.   The Court further explained "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [prior to seeking relief from a federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings . . .  Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id*. at 2386.   This interpretation of the PLRA's exhaustion requirement "carries a sanction" for noncompliance and avoids "mak[ing] the PLRA exhaustion scheme wholly ineffective." *Id*. at 2388.   Consequently, a prisoner cannot "proceed . . . to federal court" after bypassing available administrative remedies, either by failing to properly exhaust administrative

21

remedies or waiting until such remedies are no longer available, as allowing federal review under these circumstances would impose "no significant sanction" on the prisoner and "the PLRA did not create such a toothless scheme." *Id.*   Further, the PLRA's exhaustion requirement contains no futility exception where there is an available inmate grievance procedure. *See Booth,* 532 U.S. at 741 n.6 ( "[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." ); *Cox v. Mayer,* 332 F.3d 422, 424-28 (6th Cir. 2003) (holding that the exhaustion requirement applies to a former prisoner who filed his complaint without exhausting his administrative remedies and who had since been released from custody); *see also  Massey v. Helman,* 196 F.3d 727, 733 (7th  Cir. 1999).

In support of the exhaustion argument, Brown affirms that, at all times relevant to this litigation, Kilby, as well as other ADOC facilities, had a grievance procedure specifically related to healthcare complaints, and inmates are informed of it when they first arrive to the ADOC.  *A. Brown Aff. ¶¶ 3, 6 - Doc. No. 37-1.*  McKeithen acknowledged the grievance procedure when he was at Elmore Correctional Facility on November 3, 2009, and again on October 13, 2010.  *Doc. No. 37-2 at 3-4.*  Brown avers that inmates at Kilby are well aware of the process.  *A. Brown Aff. ¶ 4 - Doc. No. 37-1.*  The record in this case is undisputed that inmates at Kilby may use a grievance process to communicate complaints regarding medical treatment sought or received during their incarceration at the facility.  *Id.*  The first step is to submit an informal Medical Grievance Form to the medical staff.  *Id. ¶ 5.*  The grievance

appeal is the second step in the grievance process and involves the submission of a formal medical grievance appeal if an inmate is not satisfied with the response he received from his initial grievance.  *Id.*  A search of McKeithen's inmate medical records reflects that while he submitted sick call slips related to his medical care in the ADOC, and on September 3, 2009, he submitted a request to release his medical records to his sister, he never filed a grievance or grievance appeal, and thus, failed to exhaust properly the available administrative remedy. *Id. ¶ 6*; *Doc. No. 37-2* (McKeithen's medical records); *Doc. No. 37-3* at 144.

In opposition to Brown's dispositive motion, McKeithen does not deny that he is required to exhaust administrative remedies, or that an inmate grievance procedure is available at Kilby for complaints regarding an inmate's medical care and treatment, or that he knew about the grievance procedure and was able to use it.  *Pl.'s Resp. - Doc. No. 45.*  His only response is to say he exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a).  *Id.* at 9.  Other than his conclusory statement, McKeithen fails to allege or present any evidence that he filed the requisite grievance or grievance appeals necessary to exhaust administrative remedies with respect to the claims presented in the instant matter.

This court may properly resolve the factual issue relating to exhaustion, *see Bryant v. Rich,* 530 F.3d 1368, 1374 (11th Cir. 2008), and finds that the facts do not support McKeithen's statement that he exhausted his administrative remedies.    The undisputed record in this case establishes that Kilby provides a grievance process for inmate complaints

concerning health-related issues and concerns.  The evidentiary materials submitted by Brown demonstrate that McKeithen failed to properly exhaust the grievance process with respect to the healthcare-related actions about which he complains in this case. As noted, exhaustion of available remedies applies to all prisoners in any facility, it is mandatory, and may not be waived by the court. *See Alexander,* 159 F.3d at 1324-26 (exhaustion requirement of 42 U.S.C. § 1997e(a) is mandatory, whether the claim is brought pursuant to § 1983 or *Bidens*); *see also Porter,* 534 U.S. 516. Furthermore, this court may not consider the adequacy or futility of administrative remedies, but only the availability of such. *Higginbottom v Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000), *citing Alexander,* 159 F.3d at 1323.  To demonstrate that administrative remedies were unavailable, plaintiff must provide specific facts which indicate that prison staff inhibited him from utilizing the grievance process. *See Boyd v. Corr. Corp. Of Am.*, 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies).  Based on the foregoing, the court concludes that McKeithen's allegations against Brown regarding inadequate medical treatment and care presented in this cause of action are subject to dismissal as he failed to  properly exhaust an administrative remedy available to him which is required before he may proceed in this court on his claims. *Woodford*, 548 U.S. at 87-94.

### III.  CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendant Angela Brown's motion for summary judgment - *Doc. No. 37* - be GRANTED to the extent Brown seeks dismissal of this case for Plaintiff's failure to exhaust available administrative remedies;  *Woodford v. Ngo*, 548 U.S.81, 126 S.Ct. 2378 (2006);

2.  Defendants Cathy Jackson and Juanice Cole's motion for summary judgment - *Doc. No. 24* - be GRANTED;

3.  Judgment be ENTERED in favor of Defendants and against Plaintiff;

4.  This case be DISMISSED without prejudice as to Defendant Angela Brown;

5.  This case be DISMISSED with prejudice as to Defendants Juanice Cole and Cathy Jackson; and

6.  Costs of the proceeding be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that the parties may file an objection to the Recommendation on or before **December 19, 2013**.  Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the

Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

       Done, this 5th day of December, 2013.

                                   /s/ Terry F. Moorer
                                TERRY F. MOORER
                                UNITED STATES MAGISTRATE JUDGE